Markman, J.
(dissenting). For the reasons set forth in my dissenting statement in In re Certified Questions (Melson v Prime Ins Syndicate, Inc), 472 Mich 1225, 1231 (2005), I believe that this Court, in refusing to answer the instant certified question, not only demonstrates a lack of comity with the certifying court but even more significantly contributes to the distortion of our system of judicial federalism by ceding responsibility for the interpretation of Michigan law and thereby diminishing the control of the people of Michigan over the development of their own law.
What makes this Court’s failure to carry out its constitutional responsibility particularly egregious in the instant case is that it pertains to one of a diminishing number of areas of law in which the state judiciary still maintains primary authority, property law. The erosion in recent decades of the position of the state judiciary within our federal system is unmistakable, and yet this Court acquiesces in the further relinquishment of its authorify to interpret the law of this state on behalf of the people of this state. Instead, a court that is not accountable to the people of this state will render a determination concerning an essential question of Michigan property law.
The United States Bankruptcy Court has certified the following question to this Court: “When is an instrument deemed recorded when a recorder of deeds fails to maintain an entry book?” It is hard to imagine a more fundamental question concerning the orderly operation of a system premised upon private property rights. It is also hard to imagine a question that, if left unanswered, will sow more confusion and chaos in this system.
This same question was recently before this Court in Central Ceiling & Partition, Inc v Dep’t of Commerce, 470 Mich 877 (2004). We resolved that case on the basis of its “limited facts,” but avoided the larger question of when instruments are deemed recorded when the register of deeds fails to satisfy its statutory obligation to memorialize the filing of such instruments in a proper entry book. That the consequence of this question was well understood by this Court is evidenced by the extraor *1214 dinary monitoring that this Court subsequently undertook with regard to the operations of the Wayne County Register of Deeds.
Thus the question persists: When is an instrument deemed recorded? That is, at what point will certain fundamental rights in private property arise? What are the consequences for these rights when the government fails to carry out its legal duties? Which parties will be affected adversely in their property rights when the government fails to carry out such duties? There is perhaps no area of law in which certainty, clarity, and predictability are more essential than in the realm of property law, and it has always been a paramount responsibility of this Court to uphold these values.
The question certified here is a difficult one, as anyone reading Central Ceiling can surmise, and reasonable arguments have been made by both sides, as well as in amicus curiae briefs. But this is no argument for this Court to fail to address and resolve this question; rather, it is an argument to the contrary.
For, in the end, this question will not go unanswered; it will not he unresolved. The bench and bar, as well as all those affected by our system of property law, will eventually be made cognizant of what Michigan law requires and order will he restored to our state’s recording system. But it will not be through any action undertaken by this Court in the fulfillment of its basic constitutional responsibilities, but instead through a decision of the federal bankruptcy court. And as a result, this Court, as the highest court of our state, will have failed to carry out its first obligation to interpret the law of this state. And, as a further result, the scope of self-government belonging to the people of our state will have been diminished.
When later chapters are written in the decline of American judicial federalism, the actions of this Court in regularly refusing to answer certified questions will be entitled to at least a footnote — one of bewilderment concerning the disinterest of this Court, almost alone among state courts in the United States, in asserting the sovereign interests of this state by answering certified questions. It is immensely regrettable that the United States Bankruptcy Court, as with the other federal courts before it whose certified questions have also gone unanswered, seems better to understand the role of the Michigan Supreme Court within our system of federalism than does this Court itself.[3]

 In defense of their positions not to answer the certified question in this case, Justice Corrigan asserts that the question posed is a “political issue that must be addressed and resolved by the political branches of our state government,” and Justice Young asserts that the question posed “requires this Court to write a new priority statute.” However, (a) the question posed — under MCL 565.24, when is an instrument deemed recorded when a recorder of deeds fails to maintain an entxy book? — no more constitutes a “political question” than any other question of statutory interpretation. There is nothing in providing an answer to this question that would interfere in the remotest with any constitutional *1215 commitment of the issue to a coordinate political department; (b) underscoring this is the fact that this Court dealt with this identical issue two years ago in Central Ceiling without so much as a murmuring that we might thereby he embroiling ourselves in a “political question”; (c) further underscoring this is the fact that the certifying court itself does not view this as a “political question” and will, in fact, now be deciding it for the people of Michigan in light of this Court’s failure to do so; (d) moreover, no one is seeking to have this Court “rewrite” MCR 565.24 or any other law, but simply to exercise its core judicial power and say what the present law means.